William A. Kinsel, OSB 062301
wak@kinsellaw.com
Kinsel Law Offices, PLLC
2401 Fourth Ave., Suite 850
Seattle, WA 98121
Tel: (206) 706-8148
Attorney for Plaintiff Phillips Soil Products, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| PHILLIPS SOIL PRODUCTS, INC., an Oregon Corporation,<br>　　Plaintiff,<br><br>　　v.<br><br>LESLIE DUTY HEINTZ; JUSTIN TYME HEINTZ; and TIER 1 EXCAVATING, LLC, an Oregon Limited Liability Company,<br>　　Defendants. | Case No.<br><br>COMPLAINT<br>(Violation of RICO, 18 USC §1962, *et seq.*; Civil Conspiracy; Fraud; Conversion; Breach of Fiduciary Duties; Accounting); And:<br><br>DEMAND FOR JURY TRIAL |

For its complaint against defendants Leslie Duty Heintz, Justin Tyme Heintz, and Tier 1 Excavating, LLC, plaintiff Phillips Soil Products, Inc., alleges as follows:

### JURISDICTION AND VENUE

1.　　This is an action for violation of Sections 1962(a), (b), (c) and (d) of the Racketeer Influenced and Corrupt Organizations Act of 1970 (18 USC §1962, *et seq.*) ("RICO"); recovery of treble damages and injunctive relief under 18 USC §1964, civil conspiracy; breach of fiduciary duty, for an accounting, fraud, and for conversion.

2.　　This Court has jurisdiction over the subject matter of this action under 28 USC §1331 because the RICO claims raise a question of federal law and under 28 USC §1367 because

the remaining state law claims are so related to the RICO claims that they form part of the same case or controversy.

3.      Venue is proper in the District of Oregon under 18 USC §1965(a) because defendants are all found, reside and/or transact affairs in the District of Oregon, under 28 USC §1391(b)(1) because all of the defendants are found in, reside in and are subject to personal jurisdiction in the District of Oregon, and under 28 USC §1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in the District of Oregon.

## PARTIES

4.      Plaintiff Phillips Soil Products, Inc. ("Phillips Soil") is an Oregon corporation with its principal place of business in Canby, Oregon.  Phillips Soil sells its high quality soil products in Alaska, Washington, Oregon, California, Montana, Idaho, Utah, Nevada, Arizona and Hawaii.  It purchases most of its peat moss from Canada.  Phillips Soil's business continuously and substantially effects interstate and international commerce.

5.      Defendant Leslie Duty Heintz ("L.D. Heintz") resides at 14231 Morton Road, Oregon City, OR 97045, in Clackamas County, Oregon, at real property owned by her father-in-law Jeffrey Lee Heintz.  At all times material hereto, Leslie Duty Heintz was and is married to co-defendant Justin Tyme Heintz.  Leslie Duty Heintz was employed by plaintiff Phillips Soil from September 24, 2012 through February 29, 2016 in its Accounting Department.  After an initial training period between September 24 and November 12, 2012, Leslie Duty Heintz assumed primary responsibility for the accounting functions of the company, including tracking accounts receivables, cash receivables, accounts payable, balancing the company's bank accounts, and making daily bank deposits.

6.      Defendant Justin Tyme Heintz ("J.D. Heintz") resides at 14231 Morton Road, Oregon City, OR 97045, in Clackamas County, Oregon, at real property owned by his father Jeffrey Lee Heintz.  At all times material hereto, Justin Tyme Heintz was and is married to co-defendant Leslie Duty Heintz.

7.      Defendant Tier 1 Excavating, LLC ("Tier 1") has a principal place of business located at 14231 Morton Road, Oregon City, OR 97045, in Clackamas County, Oregon, at real property occupied by defendants Leslie and Justin Heintz and owned by Jeffrey Lee Heintz.  Tier 1 was registered as a domestic Oregon limited liability company on March 8, 2013, with defendant Justin Tyme Heintz as its registered agent.  Tier 1 was registered as a foreign limited liability company in the State of Washington on October 22, 2013.  To the extent that defendant Tier 1 is a legitimate business entity, it is engaged in business in the construction industry providing, as its name implies, excavation services.

8.      Commencing at Tier 1's registration date of March 8, 2013, defendant Justin Tyme Heintz and his father Jeffrey Lee Heintz were the two members, and were employed by, co-defendant Tier 1 Excavating, LLC.  Defendant Leslie Duty Heintz provided part-time administrative, billing and bookkeeping services to Tier 1 during this same period.

9.      Jeffrey Lee Heintz, an unnamed potential co-conspirator of the defendants herein, resides at 14231 Morton Road, Oregon City, OR 97045, in Clackamas County, Oregon, at real property titled in his own name.  Jeffrey Lee Heintz, as one of the two members of Tier 1 Excavating, LLC, and as the owner of the real property located at 14231 Morton Road, Oregon City, OR 97045, directly or indirectly benefited from many of the wrongful acts complained of herein.  As of the time of filing, it is unclear to plaintiff whether Jeffrey Lee Heintz was a knowing co-

conspirator of the three named defendants.  Plaintiff reserves the right to move to amend this complaint to add him as a defendant if discovery establishes that that is appropriate.

## FACTS

### Leslie Duty Heintz's Employment with Phillips Soil

10.    Plaintiff Phillips Soil hired defendant Leslie Duty Heintz, commencing September 24, 2012, to assume primary responsibility for Phillips Soil's accounting functions.

11.    In her capacity as the employee and agent of Phillips Soil with primary responsibility for the company's accounting functions, defendant Leslie Duty Heintz's scope of employment included issuing and tracking accounts receivables, accounting for the receipt of customer payments, in cash or otherwise, tracking and preparing checks to pay accounts payable, balancing the company's bank accounts, making daily bank deposits, managing payroll records, and generally accounting for the financial assets and liabilities of Phillips Soil.  In addition, defendant Leslie Duty Heintz's scope of employment included having access to plaintiff's online QuickBooks program for purposes of truthfully and accurately recording and reporting the financial transactions and affairs of the corporation, so that the company's general ledgers, income statements, and balance sheets could be reviewed, relied upon and acted upon as appropriate.

12.    Plaintiff Phillips Soil entrusted defendant Leslie Duty Heintz with the responsibility of managing, carry out and completing truthfully and accurately all of the above responsibilities.  Plaintiff had the right to rely and did rely on defendant Leslie Duty Heintz to honestly and truthfully perform her job responsibilities, and Leslie Duty Heintz had the fiduciary duty to do so.

13.    Plaintiff's President, William R. Phillips, discovered on February 24, 2016, that Leslie Duty Heintz's time records for her payroll had been extensively manipulated.  To explain,

Phillips Soil's payroll system uses a time clock for employees to punch in and out of work using a unique code. The information obtained from those time card "punches" is recorded and stored on plaintiff's computer servers. Defendant Leslie Duty Heintz, with her responsibilities as a company accountant, had the ability to log into the computer system and to edit her time records.

14.     What Mr. Phillips discovered on February 24, 2016, was that defendant Leslie Duty Heintz's time records had been changed dramatically more times than any of the other 13 employees of the company. For example, of those 13 employees, 6 of them had no time entry edits for the year 2015, with another 6 having time entry edits between 10 and 45 times. By contrast, Leslie Duty Heintz's time records had been manipulated one-hundred fifty-two (152) times in 2015, more than all of the other employees combined.

15.     Because there was no apparent valid reason for this large number of time clock changes, Mr. William Phillips was alarmed and investigated further by examining Leslie Duty Heintz's use of her company-issued credit card. As a result of that investigation, plaintiff discovered that defendant Leslie Duty Heintz had misused her credit card to make purchases at such places as Safeway, NW Sports Photography, Taco Bell, Dollar Tree, Fred Meyer, Starbucks, Albertsons and Amazon Digital Service, for which there was no legitimate Phillips Soil business purpose.

16.     As a result of the discovery of her misuse of the company credit card and manipulation of her time records, Leslie Duty Heintz was terminated on February 29, 2016.

17.     Subsequent investigations into L.D. Heintz's detailed credit card billing records established that the improper charges to the company credit card, from June 26, 2013 through October 22, 2015, totaled at least $1,418.10. Plaintiff states that additional discovery from earlier time periods is expected to reveal additional credit card thefts.

COMPLAINT – 5

18.     Given the nature of defendant Leslie Duty Heintz's manipulation of her clock-in and clock-out records, it is difficult to determine exactly how many hours defendant Leslie Duty Heintz overcharged her employer, plaintiff Phillips Soil.  However, plaintiff's subsequent analysis of her payroll records revealed that Leslie Duty Heintz misused her fiduciary position with respect to the entry of her payroll records by charging the company for vacation and sick leave hours that she had not earned, and also, by overcharging for hours worked even above and beyond the hours reported by her manipulated time records.  Based on those discoveries, defendant Leslie Duty Heintz caused to be paid to herself at least $1,289.60 in vacation, sick leave and hourly compensation that she had not earned.

**Discovery of Defendants' Civil Conspiracy**

19.     In hindsight, the actions that led to the firing of defendant Leslie Duty Heintz pale by comparison to the widespread abuses of her fiduciary duties, undertaken with the knowledge and encouragement of her husband and co-defendant Justin Tyme Heintz.  Those abuses were difficult to discover, as Leslie Duty Heintz used her privileged access to the company's Quick-Books, physical checks, and customer accounts receivables to manipulate the financial records in such a way as to hide her actions and thefts of substantial sums of money from Phillips Soil. Some of those fraudulent activities are described in detail below, but the full extent of Leslie Duty Heintz's fraud , as aided and abetted by her husband Justin Tyme Heintz, remains to be determined.  As of the time of the filing of this complaint, plaintiff Phillips Soil fully expects those damages to be in excess of $250,000.00.

20.     Defendants Leslie Duty Heintz and her husband Justin Tyme Heintz used the proceeds of their fraudulent, illegal activity for both their personal benefit, and to create, grow and sustain Tier 1 Excavating, LLC, which was first registered with the State of Oregon on March 8,

COMPLAINT – 6

2013, with defendant Justin Tyme Heintz and his father Jeffrey Lee Heintz identified as the two members,

21.      By way of context, at the time of her hire on September 24, 2012, Leslie Duty Heintz and her husband Justin Tyme Heintz were under substantial financial stress, as was demonstrated by the fact that Phillips Soil had to give Ms. Heintz money to buy gas simply to get to work at her new job.  In November 2012, Mr. Phillips helped Leslie Duty Heintz find a more reliable used car, but just one month later Leslie Duty Heintz was in an accident that totaled that vehicle.  Phillips Soil then helped Leslie Duty Heintz with a loan of $2,400 to purchase a used Ford Expedition.

22.      In addition, one of Phillips Soil's employees (Jolene Neuberger) who started in May 2013 remembers answering numerous phone calls from collectors/creditors calling for Leslie Duty Heintz.  Ms. Neuberger heard defendant Leslie Duty Heintz tell those creditors that her husband was not working at the time.  Plaintiff now knows that this was shortly after the creation of defendant Tier 1 Excavating.

23.      The lengthy process of uncovering the scope of Leslie Duty Heintz's illegal conduct began at the time of her firing.  At that time, William (Bill) Phillips demanded and received from Ms. Heintz the return of her company-provided cell phone.  Company personnel then began examining the content of that phone, along with her work computer.

24.      Among the contents of the cell phone were literally thousands of text messages, many of which were between defendant Leslie Duty Heintz and her husband and co-defendant Justin Tyme Heintz.  Examples of some of the incriminating text messages between defendant

Leslie Duty Heintz and Justin Tyme Heintz include the following from an August 5, 2013 conversation regarding these defendants' conclusion that they needed more money to go on a vacation:

| From Justin to Leslie Heintz | K, u need to get your paid vacation early or we can't go, $150 is barely enough to get there and back, and I'm afraid to ask what u let my mom spend that we probably owe her when we get there |
|---|---|
| From Justin to Leslie Heintz | We were supposed to do it on the $300 cash I had, here we go again, I guess when we get back we can't make rent or car payment or both.. |
| From Leslie to Justin Heintz | I owe her a case of beer that is it.  And I am taking a draw. We are going. |
| From Leslie to Justin Heintz | We will have enough |

(PSTM 000128-29.)

25.    As defendant Leslie Duty Heintz promised her husband and co-defendant Justin Heintz, she did issue herself a draw for $200 on August 5, 2013, using Phillips Check #19621. Because this draw was not authorized by plaintiff, but also because the signature of Mr. William Phillips appears authentic, plaintiff alleges that defendant Leslie Duty Heintz either physically handwrote Mr. Phillips' signature, or she obtained a signature stamp to use in issuing checks to herself, without permission, from company assets.  Either way, such conduct amounts to forgery inasmuch as it was an unauthorized signature, and an act of self-interest on the part of Leslie Duty-Heintz as opposed to and against that of her employer, Phillips Soil.

26.    Nearly two years later, on July 8, 2015, this additional text message exchange was had between the married defendants, intermingled with chit-chat about their children and personal activities:

| From Leslie to Justin Heintz | Bill [Phillips] is having Jolene [Neuberger] help him with the bank reconciling….which I normally do. |
|---|---|
| From Justin to Leslie Heintz | New it. |

| From Leslie to Justin Heintz | That'll really throw them over the edge! |
| From Leslie to Justin Heintz | Spicers is hiring-I'll work part time for them and part time for you. 😜 |
| From Leslie to Justin Heintz | I think I'm being paranoid about Bill too… |
| From Leslie to Justin Heintz | But who knows |
| From Justin to Leslie Heintz | Ya |

(PSTM 001424, PSTM 001428.)  Unfortunately, plaintiff discovered nothing out of the ordinary on July 8, 2015, and defendant Leslie Duty Heintz continued on in her role in charge of Phillips Soil's accounting functions.

27.     Defendant Leslie Duty Heintz's reference to going to work part-time for Spicers and part time for her husband is a reference to her ongoing, part-time employment by and on be-half of defendant Tier 1.  As the text messages between Leslie and Justin Heintz make clear, Leslie Duty Heintz provided the administrative and accounting support for Tier 1 Excavations from the very beginning, and she did so while at work at Phillips Soil using the resources of her employer, Phillips Soil, for the profit of the company (Tier 1) owned by her husband and father-in-law.  For instance, plaintiff discovered on Leslie Duty Heintz's work computer copies of QuickBooks financial documents for Tier 1 Excavating that were created and maintained on Phillips Soil equipment.  Those documents included a series of invoices issued (or supposedly issued) to customers of Tier 1 Excavating, bank statements for Tier 1 Excavating, and financial statements prepared by L.D. Heintz on plaintiff's QuickBooks ("QBs").

28.     Defendant Leslie Duty Heintz's work cell phone and work computer contained documentation regarding a USAA bank account that she and her husband opened in June 2014. The primary, semi-legitimate use that defendants put this account to was the receipt of Leslie Duty Heintz's electronic payroll deposits from Phillips Soil.  One area of particular concern, however, arose from plaintiff's discovery of Western Union electronic deposits into defendants'

USAA bank account that directly correlated to cash receipts from Phillips Soil customers that were subsequently deleted from Phillips Soils' QB accounts by defendant Leslie Duty Heintz.

29.     Briefly, Phillips Soil does a fairly regular, steady business of cash sales to customer who appear at the plaintiff's facility in order to purchase plaintiff's soil products.  Under standard, appropriate accounting practices, those cash receipts are recorded in the company's QuickBooks accounts and kept in a safe until taken to the bank to be deposited.  Over the course of defendant Leslie Duty Heintz's employment by Phillips Soil, she was assigned the task and, ultimately, insisted on performing the task of taking daily cash receipts for deposit to the bank, and also, to pick up company receipts mailed to plaintiff's post office box.

30.     After recovering Leslie Duty Heintz's company-issued cell phone, plaintiff discovered a limited number of electronic copies of Western Union wire deposits into defendant Heintzs' USAA checking account.  Plaintiff compared those wire deposits to its QuickBooks records and discovered, at the same time as the USAA deposits, first the receipt of cash by Phillips Soil and then a subsequent deletion by Leslie Duty Heintz of that cash deposit from the company books.  Through this process, defendant L. D. Heintz ensured that the cash deposits would not appear on the summary financial reports that are typically generated for business purposes.  Defendant L. D. Heintz's illicit activities could then only be detected through a detailed audit report of cash receipts, which then revealed the receipt of cash, followed by the deletion of the record of that cash.  Plaintiff then had to make the further investigation that revealed the matching deposit of that same cash by Leslie Duty Heintz into her and her husband's USAA bank account.

31.     Alarmed by this discovery, William Phillips launched a personal investigation into the mechanics of those cash thefts.  He did so by identifying and visiting various local Western Union locations in an effort to match the location numbers that had been found the Western

Union receipts contained on Ms. Heintz's company-provided phone.  Eventually, Mr. Phillips found the matching location number at a Safeway in Canby.  Mr. Phillips had also learned that USAA had no physical branch locations in the area (indeed, none in Oregon), but that deposits could be made via Western Union Money Orders (purchased with cash) that would be sent by United Parcel Services to USAA.

32.    Consistent with what plaintiff had learned and suspected about defendant Leslie Duty Heintz's activities, Mr. Phillips then saw a United Parcel Services branch across the street from the Safeway store that had issued Ms. Heintz the Western Union Money Orders.  Mr. Phillips then entered that United Parcel Services location and showed a photograph of Ms. Heintz to the clerk.  That clerk then informed Mr. Phillips that Ms. Heintz had been in that office "all the time" making Western Union Money Order deposits to her USAA bank account.

33.    On information and belief, based on its extensive investigation and on Leslie Duty Heintz's routine activities while supposedly fulfilling her work duties for Phillips Soil, all Western Union cash deposits into the USAA bank account she owned and controlled with her husband and co-defendant Justin Heintz constituted proceeds of cash stolen from her employer, Phillips Soil, that the defendants were laundering through this complex process.

34.    Based on Phillips Soils investigation to date, the thefts of cash by Leslie Duty Heintz typically appeared on defendants' bank account statements described as "USAA Easy Deposits", or as "mobile" deposits.  Defendant Leslie Heintz also typically stole cash ending in round numbers, rather than an amount ending in cents.  While plaintiff expects that discovery will reveal additional cash thefts, such as those that were taken prior to defendants opening their USAA bank account, those that have been identified to date are summarized in Exhibit A hereto.

There are fifty-one (51) separate transactions on Exhibit A that, on information and belief, consist of stolen cash totaling $56,325, that was laundered in this fashion. The individual transactions range from a low of $25 to a high of $10,000.

35.    Again on information and belief, based on the USAA bank records of defendants, Leslie and Justin Heintz used some of the proceeds of the stolen cash to pay expenses for defendant Tier 1 Excavating. For instance, defendant Tier 1 Excavating's principal place of business is 14231 Morton Road, Oregon City, OR 97045, which is also the residence of defendants' Heintz. That real property is owned by Jeffrey Heintz, a co-owner of Tier 1 Excavating. Between July 1, 2014 to February 2016, $20,500 was paid to Jeffrey Heintz by defendants Heintz from the USAA bank account. On information and belief based on available documentation, those payments were rental payments that directly benefited and supported defendant Tier 1 Excavating. Attached hereto as Exhibit B is a table summarizing the 21 payments made to Jeffrey Heintz during that period.

36.    In addition to the theft of cash, plaintiff's examination to date of its QuickBooks records reveals widespread and complicated pattern of repeated reallocations of the general ledger accounts to which expenses and income were allocated by defendant L. D. Heintz. On information and belief, these reallocations of expenses and income were done to conceal defendant L. D. Heintz's thefts, and to affirmatively misrepresent to plaintiff the status of Phillips Soil's financial condition.

37.    To explain, if a company owes $5,000 in rent every month, there is a general ledger account number to which the rent check will be allocated to every month. Once allocated, there should be no legitimate reason to go back into a check to re-allocate it, except in unusual circumstances were a mistake was made in the first allocation. Even then, any one check should

not be subject to reallocation more than once.  With respect to Phillips Soils' QuickBooks records, however, multiple checks were subject to multiple, nonsensical allocations that are difficult to unravel and are clearly designed to conceal defendant Leslie Duty Heintz's fraudulent conduct.

38.    In other situations, defendant Leslie Duty Heintz would simply issue herself checks and not record them in QuickBooks, in which case they did not appear on any Quick-Books company reports.  Check number 19499 for $2,000, dated January 30, 2013, just over four months after her start date, is an example of a check that was made out to Leslie Duty Heintz and endorsed by her for deposit.  That check number, however, was some 400 check numbers away from the other checks being written by the company at that time, making it less likely to be found.

39.    While defendant Leslie Duty Heintz was employed by Phillips Soil, the payments she received from plaintiff should have been limited to normal payroll, occasional bonus checks, and perhaps an occasional, small expense check.  The discovery of the stolen $2,000 encompassed by check number 19499 caused plaintiff to acquire copies of all of its checks to review the same for payments to Leslie Duty Heintz that fell outside those approved categories.  The checks that were discovered constitute stolen funds and were in many instances allocated by L. D. Heintz to the "Driver wages" general ledger account.  Because Leslie Duty Heintz was an accountant, not a driver, those allocations materially misrepresented to plaintiff to whom those funds were being paid.  The checks that constitute this secret compensation paid by Leslie Duty Heintz to herself are listed below in date, rather than in check, order.  On information and belief, like the stolen cash payments from customers, this secret compensation was used to acquire an

interest in, establish and operate the Criminal Enterprise, specifically, defendant Tier 1 Excavating, LLC.

| Bates # PSCK | Check # | Payer | Payee | Date | Amount |
|---|---|---|---|---|---|
| 9 | 19499 | Phillips Soil | LDH | 1/30/13 | $2,000.00 |
| 156 | 19705 | Phillips Soil | LDH | 9/12/13 | $400.00 |
| | | | | Total: | $2,400.00 |

40.    Phillips Soil's investigation has also revealed that, in order to conceal her activities, defendant Leslie Duty Heintz recorded certain payments in QuickBooks as going to individuals who in fact did not receive them.  Determining the full extent of this type of fraud will not be possible until after this litigation has begun, and plaintiff can serve subpoenas duce tecum on relevant third parties.

41.    However, plaintiff was able to gain access to the personal bank account records of its president, Mr. William Phillips, for the purpose of comparing the payments he actually received against the payments that the company QuickBooks, as prepared by defendant Leslie Duty Heintz, indicates he received.  That analysis reveals that $10,562.33 supposedly paid to William Phillips was in fact not received by him.  On information and belief, discovery will establish that those funds were converted by defendant Leslie Duty Heintz and her co-conspirators.

42.    A summary of the missing $10,562.33 is set forth in Exhibit C hereto.  That exhibit contains a "Comments" column that draws attention to and attempts to explain the complexity of the misrepresentations and omissions of material facts that were incorporated by defendant Leslie Duty Heintz in her work in Phillips Soils' QuickBooks records.  Three examples are discussed here.  First, according to defendant Leslie Duty Heintz's misrepresentations in the company QuickBooks, check number 20472 was issued to William Phillips on January 24, 2013

in the amount of $1,102.50.  There is no corresponding deposit in Mr. Phillips account, and when a copy of the actual check #20472 was pulled, plaintiff discovered that it was written more than a year-and-a-half later, on October 6, 2014, to Mr. Wade J. Pruett for $119.88.  Instead, a check numbered 19116 was written on or about January 24, 2013 for $1,102.50, but it was not deposited to Mr. Phillips' account.  On information and belief, defendants converted those funds.

43.    The second example on Exhibit C of L. D. Heintz's misrepresentation and omissions involves a similarly-confusing QuickBooks entry.  Defendant L. D. Heintz's QBs entry states that on July 11, 2013, check number 20473 for $771.80 was written to William Phillips, and on that day a deposit of $1,771.80 was made to Mr. Phillips' account.  Based on that, no money is missing from Mr. Phillips' account, but check number 20473 is actually for $300 and made out to a charity called Mark to Ministries.  Thus, while Mr. Phillips personally is not missing $771.80, the evidence indicates that plaintiff Phillips Soil had funds that were stolen by defendant LD Heintz in a precise manner and amount that remain to be determined.

44.    The third example on Exhibit C of L. D. Heintz's misrepresentation and omissions involves another confusing QuickBooks entry similar to that just reviewed.  Defendant L. D. Heintz's QBs entry states that on September 3, 2013, check number 20474 for $4,801.68 was written to William Phillips, and on that day a deposit in that amount was made to Mr. Phillips' account.  Based on that, no money is missing from Mr. Phillips' account, but the check number for that deposit is actually 19703.  Check #20474 is actually for $4,000, and it is made out to William Phillips, but it is dated October 6, 2014, more than a year after defendant L. D. Heintz represented in QuickBooks that it was written.  Furthermore, Mr. Phillips did not receive those funds, nor as is revealed by Exhibit A, was it deposited into defendant Heintzs' USAA account.

Instead, on information and belief, the defendants converted it in some other manner that supported themselves and the operations of defendant Tier 1 Excavating.

45.     To reemphasize earlier allegations, the fraud and breaches of fiduciary duty involving defendant L. D. Heintz's false representations of payments to Mr. William Phillips were in part detected by discovery of unusually large numbers of manipulations of general ledger allocations related to those items, followed up by a review of Mr. Phillips' personal bank statements. Thus, the pre-suit identification of the quantum of loss was dependent on having access to Mr. Phillips' personal bank statements. Unfortunately, there are many, many other persons or entities who according to L. D. Heintz's version of the company QuickBooks received payments from Phillips Soil, and whose general ledger allocations experienced similarly large and unusual manipulations. Thus, plaintiff fully expects to discover substantial additional losses once it is able to gain access to those other bank statements via the subpoena power that comes with filing suit.

46     The table below summarizes the damages identified to date:

| Credit Card Fraud: | $1,418.10 |
|---|---|
| Unearned Vacation, Sick Leave, etc. Benefits: | $1,289.60 |
| Stolen Cash: | $56,325.00 |
| Unauthorized checks issued directly to Leslie Duty Heintz: | $2,400.00 |
| Funds supposedly paid to William Phillips that were not received him: | $10,562.33 |
| | $71,995.03 |

47.     Based on the company's substantially worse financial performance during defendant Leslie Duty Heintz's employment as plaintiff's lead accountant, Phillips Soil fully expects discovery to reveal substantial additional damages caused by the wrongful conduct of the defendants named herein. For illustrative purposes, the table below demonstrates plaintiff's financial performance during that period.

COMPLAINT – 16

| Year | Time Line | Total Income | Net Ordinary Income | % Net Ordinary Income to Total Income |
|------|-----------|--------------|---------------------|---------------------------------------|
| 2011 |           | 3,251,216    | 282,390             | 8.69%                                 |
| 2012 | Heintz Starts 9/24/12 | 3,317,497 | 148,814   | 4.49%                                 |
| 2013 |           | 3,203,440    | 68,037              | 2.12%                                 |
| 2014 |           | 3,583,017    | <76,610>            | -2.14%                                |
| 2015 |           | 4,463,928    | 139,113             | 3.12%                                 |
| 2016 | Heintz fired 2/29/16 | 4,911,913 | 188,462      | 3.84                                  |
| 2017 |           | 6,202,924    | 810,191             | 13.06%                                |

48.     As can be seen, Phillips Soil's total income was quite stable from January 1, 2011 through December 31, 2014, at which point total income began trending upwards. That total income was maintained, and then improved, with a stable work force. Thus, both net ordinary income, and net ordinary income as a percent of total income, should have remained relatively stable. Instead, those results got worse during Leslie Duty Heintz's tenure, with Phillips Soil actually having *negative* net ordinary income of $76,610 in 2014 on sales of $3,583,017, when by comparison the company had positive net ordinary income in 2011 of $282,390 on lower total income of $3,251,216.

49.     Based on all of the above, plaintiff Phillips Soil alleges on information and belief that its total damages as a result of defendants' wrongful conduct exceeds $250,000.00.

**Defendants' Exploitation of Phillips Soil for the Benefit of Tier 1 Excavating**

50.     Based on plaintiff's knowledge of the financial resources of Leslie and Justin Heintz at the time of Leslie Duty Heintz's hiring by Phillips Soil, and based on the creation, rapid growth and acquisition of assets by defendant Tier 1 Excavating, LLC following its creation in March 2013, plaintiff concludes and alleges on information and belief that Leslie Duty Heintz and Justin Tyme Heintz conspired with each other and with defendant Tier 1 Excavating to defraud Phillips Soil for their mutual benefit and support.

51.     Defendant Tier 1 Excavating was fully knowledgeable of all of the acts performed by defendants Leslie Duty Heintz and Justin Tyme Heintz on its behalf because Leslie Duty Heintz provided administrative and accounting support to that limited liability company, and defendant Justin Tyme Heintz was a managing member of the same.

52.     Examples of the acquisition of assets by Tier 1 Excavating, and its activities in interstate commerce, are set forth in the table below:

| Bates # | Date | Document Description | Evidence of: |
|---------|------|----------------------|--------------|
|  | 03/08/13 | Oregon Entity Creation, Registry Number 921234-97 | Creation Date of Tier 1 Excavating, LLC |
|  | 10/22/13 | Washington Business License UBI # 603 343 262 | Washington Registration Date of 10/22/13 for Tier 1 Excavating, LLC |
| PST1 1 | 12/31/13 | Tier 1 Balance Sheet reveals company cash assets of $5,369.95, receivables of $19,755.35, and liabilities of $36,082.48. | Provides a snap-shot of a cash poor, work poor, start-up construction company. |
| PST1 63 | 6/12/14 | Receipt for $43,500 cash purchase of a new Yanmar mini-excavator with enclosed cab | On information and belief, defendants Heintz were funding Tier 1 with cash stolen from Phillips Soil, as reflected in *plaintiff's* poor net financial performance in 2014. (*See* ¶47 above.) |
| PST1 65 – 71 | 11/7/14 | CNH Industrial Capital America LLC (PA) financing documents, lender located in Lancaster, PA. | Original loan transaction for equipment purchase of a Kobelco Hydraulic Excavator, S/N YT08-30132, subject to a loan through US Bank, |
| PST1 94 | 12/14 | Tier 1 Excavating, LLC, records show first work for Lennar Corporation | Tier 1 was doing business with a national homebuilder building homes in Vancouver, WA, and Portland, Oregon. |

| PST1 58 to 62 | 7/10/15 | US Bank Equipment Finance as lender, located in Minnesota and Missouri, financing documents | Interstate refinancing transaction for the purchase of a Kobelco Hydraulic Excavator, S/N YT08-30132, subject to a loan through US Bank, |
|---|---|---|---|
| PST1 107 | 11/6/15 | Tier 1 buys a $5,345 piece of equipment from Bulldog Trailers in Chehalis, WA | Demonstrates Tier 1's involvement in interstate commerce |
| PSTM 1908 - 1910 | 12/10/2015 | Tier 1 pays $77,000 for a Takeuchi Excavator | Demonstrates Tier 1's rapid acquisition of expensive assets based at least in part on the pattern of criminal racketeering |

53.     In addition to the cash and cash-equivalents stolen by defendants Heintz and Tier 1 from plaintiff Phillips Soil, defendant Leslie Duty Heintz provided critical support to the success of Tier 1 Excavating, from that defendant's creation in March 2013 through her termination on February 29, 2016, through her use of Phillips Soil's company resources, including plaintiff's physical assets (like its computers and phones) and Leslie Duty Heintz's labor during the work day, when she was supposed to be working in Phillips Soil's interest.   She was, instead, working routinely on behalf of the interests of Tier 1, her husband and herself.

54.     As is revealed by the text messages exchanged between Leslie Duty Heintz and Justin Tyme Heintz, defendant Justin Tyme Heintz was fully aware of, actively encouraged and affirmatively directed defendant Leslie Duty Heintz to engage in the wrongful acts described above.  Given his role as a managing member of Tier 1 Excavating, that means that Tier 1 Excavating participated directly in those wrongful acts as well.

55.     The value of Leslie Duty Heintz misappropriated labor is, by its fundamental nature, difficult to establish.  However, because defendant Leslie Duty Heintz was a fiduciary of her employer, Phillips Soil, plaintiff makes demand upon her to account for her time and, in particular, to refund due to her breach of fiduciary duties all of the overtime hours and bonuses in

the approximate amount of $23,258.15, during her period of employment, above and beyond her

normal 40 hour work week.

56.     Plaintiff accordingly alleges that it has been damaged in an amount to be proven

at trial, expected to exceed $250,000, but here alleged to be at least $95,253.18, plus prejudg-

ment interest on those elements of its claim that are liquidated.

## FIRST CLAIM FOR RELIEF

## (Violation of RICO, 18 U.S.C. §1962(a), (b), (c) & (d), §1964(a) & (c) against all defend-
## ants.)

57     Plaintiff realleges paragraphs 1 through 56.

58.     Defendants Leslie Duty Heintz, Justin Tyme Heintz and Tier 1 Excavating, LLC

are "persons" as defined by 18 USC §1961(3).

59.     Plaintiff Phillips Soil is an "enterprise" as defined by 18 USC §1961(4).  Phillips

Soil was a victim of the defendants' racketeering activity, it was damaged by that wrongful con-

duct and is referred to as the "Victimized Enterprise."

60.     The Victimized Enterprise is a legitimate corporation doing business in many

states, as well as in Canada.  The Victimized Enterprise is therefore an enterprise engaged in and

affecting interstate commerce within the meaning of 18 USC §1962(c).  The purpose of the Vic-

timized Enterprise is to manufacture, sell and distribute quality soil products for agricultural pur-

poses throughout numerous states of the United States.

61.     Defendant Tier 1 Excavating, LLC is also an "enterprise" as defined by 18 USC

§1961(4) (the "Tier 1 Enterprise").  Defendant Tier 1 Excavating, LLC, was a control person and

an active participant in the defendants' racketeering activity.  To the extent the Tier 1 Enterprise

is a legitimate business, it provides excavation services in Oregon and Washington, and engages

in financial transactions with lenders located in such states as Minnesota, Missouri and Pennsylvania.  The Tier 1 Enterprise is therefore also an enterprise engaged in and affecting interstate commerce within the meaning of 18 USC §1962(a) and (b).

62.    The members of the "Criminal Enterprise" are (i) defendant Leslie Duty Heintz, (ii), Justin Tyme Heintz, and (iii) defendant Tier 1 Excavating, LLC.  To the extent the Criminal Enterprise is a legitimate business, it provides excavation services through its members Tier 1 Excavating and Justin Tyme Heintz in Oregon and Washington.  The Criminal Enterprise also engages in financial transactions through its members Tier 1 Excavating, Justin Tyme Heintz and Leslie Duty Heintz with lenders located in such states as Minnesota, Missouri and Pennsylvania, and with financial services entities (i.e., Western Union) located in Colorado and (with USAA) in Texas.  The Criminal Enterprise is therefore also an enterprise engaged in and affecting interstate commerce within the meaning of 18 USC §1962(a) and (b).

63.    During the relevant time period, defendant Leslie Duty Heintz was an employee of and perpetrator associated with the Victimized Enterprise, and an employee, perpetrator, associate and control person of the Criminal Enterprise.  Defendant Justin Tyme Heintz was an employee, perpetrator, associate and control person of the Criminal Enterprise, and associated with the Victimized Enterprise through his control and direction of defendant Leslie Duty Heintz's activities while at work at Phillips Soil.  Defendant Tier 1 was an employee, perpetrator, associate and control person of the Criminal Enterprise, and through its managing member Justin Tyme, was associated with the Victimized Enterprise.  The Criminal Enterprise and its constituent members profited substantially from the defendants' illegal acts, to the damage of the Victimized Enterprise.

64.    During the relevant time period, each of the defendants conducted or participated as a principal, directly or indirectly, in conducting both the Victimized Enterprise's affairs, and the Criminal Enterprise's affairs, through a "pattern of racketeering activity" within the meaning of 18 USC §1961(5) in violation of 18 USC §1962(a), (b), (c), and (d), all to the detriment of the Victimized Enterprise and to the benefit of the Criminal Enterprise.

65.    Each defendant was a perpetrator of the racketeering activity through her, his, their employment, association or control of one or both of the Enterprises.  As set forth in more detail above, and as reflected on Exhibit A hereto, defendant Leslie Duty Heintz, with the active encouragement and direction of her husband Justin Tyme Heintz, engaged in substantially more than two predicate acts that constituted transportation of stolen securities and/or money under 18 USC §2314, wire fraud under 18 USC §1343 and money laundering under 18 USC §1956 because, e.g., each of the stolen cash deposits was laundered, first, by the purchase of a money order (which constitutes a security under §2314) issued by Western Union out of Englewood, Colorado, and then wired to USAA Federal Savings Bank in San Antonio, Texas.  From there, defendants spent those illegal proceeds, for instance, in Oregon in furtherance of the joint interests of the Criminal Enterprise through the payment of rent for business and personal purposes.  (*See* Exhibit A, identifying 51 acts of money laundering, including the 12/19/14 $5,000 transaction and the 9/21/15 $10,000 transaction; *See* Exhibit B for the summary of rent payments to Jeff Heintz.)

66.    Defendant Justin Tyme Heintz also engaged in substantially more than two predicate acts that constituted receipt of stolen securities and/or money under 18 USC §2315, wire fraud under 18 USC §1343 and money laundering under 18 USC §1956 because each of the sto-

len cash deposits was laundered, first, by the purchase of a money order (which constitutes a security under §2315) issued by Western Union out of Englewood, Colorado, and then wired to USAA Federal Savings Bank in San Antonio, Texas.  From there, defendants spent those illegal proceeds in Oregon, for instance, in furtherance of the joint interests of the Criminal Enterprise through the payment of rent for business and personal purposes.  (*See* Exhibit A, identifying 51 acts of money laundering, including the 12/19/14 $5,000 transaction and the 9/21/15 $10,000 transaction; *See* Exhibit B for the summary of rent payments to Jeff Heintz.)

67.    Defendants used the Victimized Enterprise to commit more than two of these acts of racketeering activity.  The violations were not isolated or sporadic and involved repeated violations of the law to further defendants' fraudulent scheme to enrich the Tier 1 Enterprise, and each of the three members of the Criminal Enterprise, all at the expense of the Victimized Enterprise

68.    Defendants' pattern of racketeering activity damaged the Victimized Enterprise, and indirectly, its owner William Phillips.  The negative impact of this pattern of racketeering activity was not limited to Phillips Soil, however, as during its investigation plaintiff learned that defendant Leslie Duty Heintz engaged in similar acts with a previous employer, named Curtis Heintz Excavating, by embezzling funds over roughly a 1 year period before being terminated. Curtis Heintz Excavating, which is owned by Justin Tyme Heintz's uncle and has been in business around 34 years, is understood to have not prosecuted the matter because of the family relationship.  When applying for her job at Phillips Soil, defendant Leslie Duty Heintz intentionally concealed this prior misconduct by falsely stating that she had left that company for the purpose of going on maternity leave, rather than truthfully stating that she had been fired for fraud.

69.    Defendants' repeated violations of 18 USC §§2314, 2315, 1343 and 1956 extended over a 3-plus year period between September 2012 and February 29, 2016, and included at least 51 distinct criminal acts.

70.    The acts of racketeering activity described in more detail above constitute a "pattern of racketeering activity" within the meaning of 18 USC §1961(5).  (*See* Exhibits A & B.)

71.    Defendants' repeated violations of 18 USC §§2314, 2315, 1343 and 1956 are sufficiently related to form a pattern of racketeering activity.  There is continuity between the violations because the violations are related to each other by virtue of common participants (Leslie Duty Heintz, Justin Tyme Heintz, Tier 1 Excavating, LLC); a common victim in the form of Phillips Soil, the Victimized Enterprise; a common method of commission; a common purpose, a common time period; and the common result of defrauding the Victimized Enterprise for the benefit of the Criminal Enterprise.

72    On information and belief, defendants continued to engage in racketeering activity designed to disguise and hide the illegal nature of their prior acts, posing the threat of continuing criminal activity during and after the time defendants defrauded the Victimized Enterprise for the benefit of defendants Leslie Duty Heintz, Justin Tyme Heintz and Tier 1 Excavating, LLC, acting together as the Criminal Enterprise.

73.    The Victimized Enterprise received no benefits from the defendants' pattern of racketeering activity.

74.    During the relevant time period, between approximately September 2012 to February 29, 2016, Leslie Duty Heintz, Justin Tyme Heintz and Tier 1 Excavating, LLC knowingly joined a conspiracy to violate 18 U.S.C. §1962(c) through an agreement to conduct and partici-

pate, directly and indirectly, in the conduct of the affairs of the Victimized Enterprise, to that enterprise's detriment, and to violate 18 U.S.C. §1962(a) and(b) through an agreement to acquire, establish and operate Tier 1 Excavating, LLC at least in part with the proceeds of their illegal activities.  Said conspiracy to defraud Phillips Soil through their pattern of racketeering activity violates 18 U.S.C. §1962(d).

75.     Defendants committed or caused to be committed a series of overt acts in furtherance of the conspiracy through a pattern of racketeering activity by agreeing to commit two or more predicate offenses, as set forth in more detail above.

76.     As a direct and proximate result of defendants' violations of 18 U.S.C. §1962(a), (b), (c) and (d), plaintiff Phillips Soil has sustained damages in an amount to be proven at trial but believed to be at least $95,253.18.  Plaintiff should be awarded judgment against defendants, jointly and severally, pursuant to 18 U.S.C. §1964(c) consisting of treble damages of at least $285,759.54, plus attorneys' fees and costs.

77.     In addition, plaintiff should be awarded judgment against defendants, jointly and severally, pursuant to 18 U.S.C. §1964(a) in the form of injunctions intended to prevent and restrain violations of section 1962 by ordering defendants Leslie Duty Heintz, Justin Tyme Heintz and Tier 1 Excavating, LLC, to divest herself, himself and itself of any interest, direct or indirect, in the Criminal Enterprise or its assets; imposing reasonable restrictions on the future activities or investments of defendants Leslie Duty Heintz, Justin Tyme Heintz and Tier 1 Excavating, including, but not limited to, prohibiting them from engaging in the same type of endeavor as the Criminal Enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of defendant Tier 1 Excavating, LLC, making due provision for the rights of innocent persons.

## SECOND CLAIM FOR RELIEF

### (Civil Conspiracy by All Defendants)

78.     Plaintiff Phillips Soil realleges paragraphs 1 to 77.

79.     By the actions or omissions described above, defendants knowingly acted in con-
cert to fraudulently transfer Phillips Soil's assets to accounts controlled by or for the benefit of
defendants Heintz and/or defendant Tier 1 Excavating, LLC.

80.     Defendants acted in their respective roles as described above according to a pre-
determined and commonly understood and accepted plan of action, all for the purposes of
wrongfully obtaining Phillips Soil's assets.

81.     The acts of defendants were and are contrary to numerous provisions of law.

82.     As a direct and proximate result of defendants' civil conspiracy, Phillips Soil has
sustained damages expected to exceed $250,000, but here alleged to be at least $95,253.18, plus
prejudgment interest on those elements of its claim that are liquidated.

83.     Defendants should be required to make plaintiff whole from all of said losses.

## THIRD CLAIM FOR RELIEF

### (Fraud by All Defendants)

84.     Plaintiff Phillips Soil realleges paragraphs 1 to 83.

85.     By the actions or omissions described above, including defendant Leslie Duty
Heintz's pervasive manipulation of Phillips Soils QuickBooks records through affirmative mis-
representations and omissions, defendants knowingly concealed material facts, failed to disclose
material facts, and made misrepresentations of material facts, regarding among other things the
theft of cash receipts, the theft of accounts receivable, and the general theft of Phillips Soil's
cash-equivalent assets.

86.    Defendants knew that their representations, failures to disclose, and their active concealment of material facts were false and misleading, and that their representations and/or omissions were made with the intention that Phillips Soil would rely on them as actions or representations made in the normal course of business regarding plaintiff's financial state of affairs.

87.    Phillips Soil was kept ignorant of the true facts of defendants' complicated scheme to defraud Phillips Soil through defendant Leslie Duty Heintz's complex manipulation of plaintiff's QuickBooks records, and through her active attempts to conceal the same by doing her best to maintain control over the accounting functions of the company.  But for defendants' scheme to defraud, plaintiff would have prevented defendants' recurring thefts of funds from occurring, and the losses complained of herein would have been avoided.

88.    After discovering defendants' fraud, Phillips Soil incurred and will continue to incur substantial additional costs to reconcile the Victimized Enterprise's accounts, and has incurred and will incur professional fees as a result of those efforts to rectify its losses.

89.    As a direct and proximate result of defendants' fraudulent actions, representations and/or omissions, Phillips Soil has sustained damages expected to exceed $250,000, but here alleged to be at least $95,253.18, plus expenses as described above, and prejudgment interest on those elements of its claim that are liquidated.  Plaintiff Phillips Soil should be compensated and made whole for these losses by all of the defendants, jointly and severally.

## FOURTH CLAIM FOR RELIEF

### (Conversion by All Defendants)

90.    Plaintiff Phillips Soil realleges paragraphs 1 to 89.

91.    By the actions or omissions described above, defendants intentionally took pos-
session or control over funds belonging to Phillips Soil, or the ill-gotten gains of funds belonging
to Phillips Soil, and did not return them but instead kept them for their own use or benefit.

92.    Defendants' intentional conversion of the funds was inconsistent with, and seri-
ously interfered with, the rights of Phillips Soil to its funds.

93.    As a direct and proximate result of defendants' conversion, Phillips Soil has sus-
tained damages expected to exceed $250,000, but here alleged to be at least $95,253.18, plus ex-
penses as described above, and prejudgment interest on those elements of its claim that are liqui-
dated.  Phillips Soil should be compensated for and made whole from said damages.

## FIFTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty All Defendants)

94.    Plaintiff Phillips Soil realleges paragraphs 1 to 93.

95.    As an employee of Phillips Soil, defendant Leslie Duty Heintz was under certain
fiduciary duties to Phillips Soil as her employer, including without limitation, duties of loyalty,
trust, honesty and disclosure, which among other things required her not to deal in Phillips Soil's
business for her own benefit, to make full disclosure to Phillips Soil of all material facts, to avoid
or refuse receipt of stolen funds, or secret compensation, and to otherwise act in the utmost good
faith and honesty toward Phillips Soil in all matters connected with her employment.

96.    Defendant Justin Tyme Heintz is jointly and severally liable with defendant Leslie
Duty Heintz for the violation of her fiduciary duties because he aided, abetted and conspired with
her in that breach (a) by acting in concert with her in pursuit of their common, tortious design,
and (b), because he knew or should have known that his wife's conduct constituted a breach of

her fiduciary duty to Phillips Soil, and he gave her substantial assistance, encouragement and di-rection in doing so.

97.     Defendant Tier 1 Excavating is jointly and severally liable with defendant Leslie Duty Heintz and Justin Tyme Heintz for the violation of Leslie Duty Heintz's fiduciary duties because it aided, abetted and conspired with her in that breach (a) by acting in concert with her in pursuit of their common, tortious design, and (b), because it knew or should have known that Leslie Duty Heintz's conduct constituted a breach of her fiduciary duty to Phillips Soil, and it gave her substantial assistance, encouragement and direction in doing so.

98.     By her actions and omissions as described above, defendant Leslie Duty Heintz acted in disregard of her fiduciary duties owed to Phillips Soil by committing the fraud outlined above, by breaching her agreements with Phillips Soil, by placing her own interests above those of Phillips Soil in her position as an employee of the company and by misleading Phillips Soil in her position as an employee of the company and by misleading Phillips Soil through acts or omissions and otherwise as more fully described herein.

99.     Defendants Justin Tyme Heintz and Tier 1 Excavating, LLC, are joint tortfeasors with defendant Leslie Duty Heintz in the breach of her fiduciary duties to plaintiff Phillips Soil.

100.     As a direct and proximate result of the actions taken by Leslie Duty Heintz in breach of her fiduciary duties, Phillips Soil has sustained damages expected to exceed $250,000, but here alleged to be at least $95,253.18, plus expenses as described above, and prejudgment interest on those elements of its claim that are liquidated.  Each defendant should be jointly and severally liable for compensating Phillips Soil from said damages.

## SIXTH CLAIM FOR RELIEF

### (For an Accounting against All Defendants)

101.    Plaintiff Phillips Soil realleges paragraphs 1 to 100.

102.    By her wrongful actions and omissions described above, defendants have obtained funds or access to funds belonging to Phillips Soil.

103.    Defendants have failed to account for the use and location of Phillips Soil's funds, or for all of the time that Leslie Duty Heintz charged plaintiff for personal services supposedly rendered on behalf of, in the interests of, Phillips Soil.

104.    Plaintiff Phillips Soil requests that the Court order defendants to provide records of books and accounts to establish the use and location of Phillips Soil's funds.

### JURY DEMAND

105.    Pursuant to Fed. R. Civ. P. 38, Phillips Soil hereby demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Phillips Soil Products, Inc., hereby prays for judgment in its favor as follows:

A.    Against Leslie Duty Heintz, Justin Tyme Heintz and Tier 1 Excavating, LLC, jointly and severally, for actual damages in an amount to be proven at trial and believed to be in excess of $250,000, but alleged to be at least $95,253.18, plus treble damages of at least $285,759.54, and attorneys' fees and costs (including professional fees of experts, etc.), for violation of RICO, 18 USC §1962, *et seq.*, as authorized by 18 USC §1964(c);

B.    For the entry of injunctions preventing and restraining violations of 18 USC §1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering defendants Leslie Duty Heintz, Justin Tyme Heintz and Tier 1 Excavating, LLC to divest herself,

himself or itself of any interest, direct or indirect, in the Criminal Enterprise or its assets; impos-

ing reasonable restrictions on the future activities or investments of defendants, including, but

not limited to, prohibiting any of the defendants from engaging in the same type of endeavor as

the Criminal Enterprise engaged in, the activities of which affect interstate or foreign commerce;

and ordering dissolution or reorganization of the Criminal Enterprise, making due provision for

the rights of innocent persons.

      C.      Against Leslie Duty Heintz, Justin Tyme Heintz and Tier 1 Excavating, LLC,

jointly and severally, for actual damages in an amount to be proven at trial and believed to be in

excess of $250,000, but alleged to be at least $95,253.18, plus attorneys' fees and costs (includ-

ing professional fees of experts, etc.) as permitted by law and equity, for fraud and civil conspir-

acy;

      D.      Against Leslie Duty Heintz, Justin Tyme Heintz and Tier 1 Excavating, LLC,

jointly and severally, for actual damages in an amount to be proven at trial and believed to be in

excess of $250,000, but alleged to be at least $95,253.18, plus attorneys' fees and costs (includ-

ing professional fees of experts, etc.) as permitted by law and equity, for conversion;

      E.      Against Leslie Duty Heintz, Justin Tyme Heintz and Tier 1 Excavating, LLC,

jointly and severally, for actual damages in an amount to be proven at trial and believed to be in

excess of $250,000, but alleged to be at least $95,253.18, plus attorneys' fees and costs (includ-

ing professional fees of experts, etc.) as permitted by law and equity, for breach of fiduciary du-

ties;

      F.      For an Order directing Leslie Duty Heintz, Justin Tyme Heintz and Tier 1 Exca-

vating, LLC, as a result of the breach of fiduciary duty, to provide an accounting of the use and

location of Phillips Soil's funds, and of the manner in which Leslie Duty Heintz spent the time for which she was compensated as an employee;

G.    For such equitable relief as may be required to return to Phillips Soil its assets and lost profits;

H.    For an award of its attorneys' fees, costs, and expenses incurred herein; and

I.    For such other further relief as the Court deems just and equitable.

At the appropriate time, Phillips Soil intends to amend its Complaint to assert claims for punitive damages on relevant claims, and to add additional parties if the evidence justifies the same.

Dated: February 9, 2018                     /s/ William A. Kinsel
                                            William A. Kinsel, OSB 062301
                                            Kinsel Law Offices, PLLC
                                            Attorney for Plaintiff Phillips Soil Products, Inc.

EXHIBIT A:  CASH STOLEN FROM PHILLIPS SOIL

| Date | Bates No. | Deposit Amount |
|------|-----------|---------------:|
| 7/28/14 | USAA 000006 | $1,500.00 |
| 8/14/14 | USAA 000016 | $500.00 |
| 9/3/14 | USAA 000026 | $1,500.00 |
| 10/16/14 | USAA 000034 | $25.00 |
| 10/16/14 | USAA 000034 | $1,500.00 |
| 10/29/14 | USAA 000044 | $100.00 |
| 11/7/14 | USAA 000044 | $500.00 |
| 11/24/14 | USAA 000044 | $1,000.00 |
| 12/1/14 | USAA 000052 | $550.00 |
| 12/1/14 | USAA 000052 | $600.00 |
| 12/12/14 | USAA 000052 | $3,300.00 |
| 12/19/14 | USAA 000052 | $5,000.00 |
| 1/29/15 | USAA 000075 | $25.00 |
| 1/29/15 | USAA 000075 | $1,000.00 |
| 2/17/15 | USAA 000075 | $4,000.00 |
| 3/4/15 | USAA 000084 | $300.00 |
| 3/4/15 | USAA 000084 | $500.00 |
| 3/4/15 | USAA 000084 | $500.00 |
| 3/4/15 | USAA 000084 | $500.00 |
| 5/5/15 | USAA 000103 | $300.00 |
| 5/5/15 | USAA 000103 | $500.00 |
| 5/26/15 | USAA 000103 | $500.00 |
| 5/26/15 | USAA 000103 | $500.00 |
| 5/26/15 | USAA 000103 | $500.00 |
| 5/26/15 | USAA 000103 | $500.00 |
| 6/4/15 | USAA 000113 | $500.00 |
| 6/4/15 | USAA 000113 | $200.00 |
| 6/4/15 | USAA 000113 | $500.00 |
| 6/4/15 | USAA 000113 | $500.00 |
| 6/4/15 | USAA 000113 | $500.00 |
| 6/4/15 | USAA 000113 | $500.00 |
| 6/4/15 | USAA 000113 | $500.00 |
| 6/4/15 | USAA 000113 | $500.00 |
| 6/4/15 | USAA 000113 | $500.00 |
| 7/31/15 | USAA 000137 | $2,000.00 |
| 9/10/15 | USAA 000146 | $1,500.00 |
| 9/21/15 | USAA 000146 | $10,000.00 |
| 10/13/15 | USAA 000157 | $100.00 |
| 11/9/15 | USAA 000168 | $3,000.00 |
| 11/24/15 | USAA 000168 | $1,000.00 |

| Date | Bates No. | Deposit Amount |
|---|---|---|
| 12/2/15 | USAA 000178 | $500.00 |
| 12/2/15 | USAA 000178 | $500.00 |
| 12/2/15 | USAA 000178 | $500.00 |
| 12/2/15 | USAA 000178 | $600.00 |
| 12/9/15 | USAA 000178 | $500.00 |
| 12/29/15 | USAA 000189 | $25.00 |
| 12/29/15 | USAA 000189 | $200.00 |
| 12/29/15 | USAA 000189 | $500.00 |
| 12/29/15 | USAA 000189 | $500.00 |
| 1/11/16 | USAA 000189 | $1,000.00 |
| 1/29/16 | USAA 000198 | $4,000.00 |
|  | TOTAL | $56,325.00 |

EXHIBIT A, p. 2

EXHIBIT B

USAA Payments for the Benefit of Tier 1 Excavating, LLC
LISTING OF PAYMENTS TO JEFF HEINTZ FROM USAA ACCOUNT

| Date | Bates No. | Check No. | Check Amount |
|---|---|---|---|
| 7/1/14 | USAA 000015 | 1001 | $500.00 |
| 7/25/14 | USAA 000015 | 1029 | $1,000.00 |
| 9/3/14 | USAA 000033 | 1037 | $1,000.00 |
| 9/10/14 | USAA 000033 | 1041 | $500.00 |
| 10/16/14 | USAA 000043 | 1053 | $1,000.00 |
| 10/31/14 | USAA 000051 | 1003 | $500.00 |
| 12/1/14 | USAA 000063 | 1062 | $1,000.00 |
| 12/19/14 | USAA 000063 | 1069 | $1,000.00 |
| 1/24/15 | USAA 000074 | 1079 | $1,000.00 |
| 2/19/15 | USAA 000083 | 1085 | $1,000.00 |
| 3/31/15 | USAA 000102 | 1097 | $1,000.00 |
| 4/30/15 | USAA 000113 | 1103 | $1,000.00 |
| 5/31/15 | USAA 000125 | 1113 | $1,000.00 |
| 6/30/15 | USAA 000136 | 1120 | $1,000.00 |
| 8/19/15 | USAA 000145 | 1128 | $1,000.00 |
| 9/15/15 | USAA 000156 | 1131 | $1,000.00 |
| 9/29/15 | USAA 000167 | 1139 | $1,000.00 |
| 11/9/15 | USAA 000177 | 1148 | $1,000.00 |
| 12/3/15 | USAA 000188 | 1153 | $1,000.00 |
| 1/4/16 | USAA 000197 | 1157 | $1,000.00 |
| 2/5/16 | USAA 000206 | 1165 | $2,000.00 |
| | | TOTAL | $20,500.00 |

EXHIBIT C

SUMMARY OF MISSNG PAYMENTS TO WILLIAM PHILLIPS

| Date | QB Check #, Etc. | Amount | Bates # (BPCB) | Missing Funds | Comments |
|---|---|---|---|---|---|
| 1/24/13 | 20472 | 1,102.50 | 142 | 1,102.50 | No deposit.   20472 is to Wade Pruett for $119.88. Actual check is Numbered 19116. |
| 7/11/13 | 20473 | 771.80 | 120 | 0 | 7/11 $1,771.80 deposit. Actual check is Mark To Ministries for $300 |
| 9/3/13 | 20474 | 4,801.68 | 114 | 0 | Correct check no. is 19703.  Check #20474, listed below, is for $4,000 and is missing. |
| 11/5/13 | 19803 | 1,500 | 108 | 1,500.00 | |
| 4/18/14 | Quickn | 72.99 | 89 | 72.99 | |
| 4/18/14 | 20155 | 72.99 | 89 | 72.99 | |
| 5/7/14 | 20197 | 77 | 85 | 77.00 | |
| 8/8/14 | DMV | 90 | 75 | 90.00 | |
| 9/25/14 | 10203 | 96.85 | 69 | 96.85 | |
| 10/6/14 | 20474 | 4,000 | 66 | 4,000.00 | |
| 12/5/14 | 6611 | 1,000 | 60 | 1,000.00 | |
| 12/18/14 | Eft | 550 | 56 | 550.00 | |
| 12/26/14 | 20669 | 2,000 | 58 | 2,000 | |
| Est. Total Missing | | | | 10,562.33 | |